ORIGINAL



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRICIA ANN RATRA,                          §
                                           §
        Plaintiff,                         §
                                           §
v.                                         §        Civil Action No. 3:12-CV-1854-N
                                           §
MORNINGSTAR FOODS, LLC,                    §
                                           §
        Defendant.                         §

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

Now that you have heard all of the evidence, it becomes my duty to give you the instructions of the Court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I explain it to you and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in these instructions, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

Do not let bias, prejudice, or sympathy play any part in your deliberations. This case should be considered and decided by you as an action between persons of equal standing in

the community and holding the same or similar stations in life. The law does not give special treatment to any person. A corporation, a limited liability company, and all other persons are equal before the law and must be treated as equals in a court of justice. Our system of law does not permit jurors to be governed by prejudice, sympathy, or public opinion. The parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated in these instructions, and reach a just verdict regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

As stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses, the exhibits admitted in the record, and the stipulated facts. Stipulated facts must be regarded as proven facts. The term "evidence" does not include anything that I have instructed you to disregard.

Remember that the lawyers' statements, objections, or arguments – whether made during the trial or during their opening and closing statements – are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case and, in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice. However, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding

upon you.  If an attorney's question assumes that some fact is true and the witness did not agree with that assumption, the question itself is not evidence that the assumed fact is true. You should not consider or be influenced by the fact that during the trial of this case, counsel have made objections to the testimony, as it is their duty to do so, and it is the duty of the Court to rule on those objections in accordance with the law.

You are not bound by any opinion that you might think I have concerning the facts of this case, and if I have in any way said or done anything that leads you to believe that I have any opinion about the facts in this case, you are instructed to disregard it.  Further, nothing in these instructions to you is intended to suggest what verdict I think you should find.

Although you should consider only the evidence in the case, you are permitted to draw any reasonable inferences from the testimony and exhibits that you feel are justified in light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts established by the evidence in the case.

You should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" exists when the evidence directly establishes the facts that a party asserts to be true, such as by an eyewitness or in a document.  "Circumstantial evidence" is proof of a chain of facts and circumstances that suggests a conclusion that an essential fact does actually exist, although not directly proving the existence of the essential fact.  The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

During the course of this trial I may have instructed you that I admitted certain testimony and certain exhibits for a limited purpose. If so, you may consider such evidence only for the specific limited purposes for which it was admitted.

Now, I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or believability of each witness and the weight or significance to be given to the witness's testimony. In weighing the testimony of a witness, you should consider the witness's relationship to a particular party; the witness's interest, if any, in the outcome of the case; the witness's manner of testifying; the witness's opportunity to observe or acquire knowledge concerning the facts about which the witness testified; the witness's candor, fairness, and intelligence; and the extent to which the witness's testimony has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness, in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be "impeached" or discredited by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, that is inconsistent with the witness's present testimony. If you believe that any witness has been

so impeached, it is your exclusive right to give the testimony of that witness whatever credibility or weight, if any, as you think it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as the witness remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only an unimportant detail.

Unless you are instructed otherwise, Plaintiff has the burden of proving each essential element of her claims by a preponderance of the evidence. Likewise, the Defendant has the burden of proving each essential element of any affirmative defense by a preponderance of the evidence. A preponderance of the evidence means sufficient evidence that, when considered and compared to the opposing evidence, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. To establish a claim by a preponderance of the evidence merely means to prove that the claim is more likely true than not true. If the proof fails to establish any essential part of a party's claim by a preponderance of the evidence, you should find for the opposing party on that claim.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all the witnesses, regardless of who may have

called them, and all the exhibits received in evidence, regardless of who may have produced them.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.

The acts of a corporation includes the actions of its employees or agents acting within the course and scope of their employment or agency.

"Ratra" means Plaintiff Tricia Ann Ratra.

"Morningstar" means Defendant Morningstar Foods, LLC.

Title VII, which prohibits pregnancy discrimination, and the Family Medical Leave Act ("FMLA") do not shield against harsh treatment in the workplace. Nor do the statutes require the employer to have good cause for its decisions. They are not a vehicle for second-guessing business decisions. An employer may take adverse action against an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not for a reason prohibited by the statutes.

TITLE VII

QUESTION NO. 1:

Was Ratra's pregnancy a motivating factor in Morningstar's decision to discharge Ratra?

Answer "yes" or "no":



INSTRUCTIONS FOR QUESTION NO. 1:

1.      Ratra claims she was discriminated against because of her pregnancy.

2.      Morningstar denies Ratra's claims and contends it discharged Ratra based on her unauthorized use of Mike Wallace's electronic signature to self-approve her own timesheets, without any prior or subsequent management approval.

3.      It is unlawful for an employer to discriminate against an employee because of the employee's pregnancy.

4.      To prove unlawful discrimination, Ratra must prove by a preponderance of the evidence that her pregnancy was a motivating factor in Morningstar's decision to discharge Ratra.

5.      A motivating factor in an employment decision is a reason for the decision at the time it was made.  There may be more than one motivating factor for an employment decision.

6.      If you disbelieve the reason Morningstar has given for its decision, you may infer Morningstar discharged Ratra because of her pregnancy.

If your answer to Question No. 1 is "yes," then answer the following question. Otherwise do not answer the following question.

QUESTION NO. 2:

Would Morningstar have taken the same action inquired about in Question No. 1 in the absence of the impermissible motivating factor of pregnancy discrimination?

Answer "yes" or "no": 

No

INSTRUCTIONS FOR QUESTION NO. 2:

The burden of proof is on Morningstar to establish this defense by a preponderance of the evidence.

If your answer to Question No. 1 is "yes" and your answer to Question No. 2 is "no,"

then answer the following question.  Otherwise do not answer the following question.

QUESTION NO. 3:

Based on the evidence presented, do you find that Ratra should be awarded punitive

damages for the conduct found by you in Question No. 1?

Answer "yes" or "no":

_____ no _____

INSTRUCTIONS FOR QUESTION NO. 3:

1.      Punitive damages are those damages designed to punish a defendant and to

deter a defendant and others from engaging in similar conduct in the future

2.      In this case you may award punitive damages if Ratra proves by a

preponderance of the evidence that:  (1) the individual who engaged in the discriminatory

act(s) or practice(s) was a managerial employee; (2) he engaged in the discriminatory act(s)

or practice(s) while acting in the scope of his employment; and (3) he acted with malice or

reckless indifference to Ratra's federal protected right to be free from discrimination.

3.      If Ratra has proven these facts, then you may award punitive damages, unless

Morningstar proves by a preponderance of the evidence that the conduct or act was contrary

to the employer's good faith efforts to prevent discrimination in the workplace.

4.      In determining whether the employee was a "managerial employee" of

Morningstar, you should consider the type of authority the employee had over Ratra and

whether Morningstar delegated employment decisions to the employee.

5.      An action was in "reckless indifference" to Ratra's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Ratra is not required to show egregious or outrageous discrimination to recover punitive damages. However, proof that Morningstar engaged in intentional discrimination is not enough in itself to justify an award of punitive damages.

6.      In determining whether Morningstar made "good faith efforts" to prevent discrimination in the workplace, you may consider things like whether it adopted anti-discrimination policies, whether it educated its employees on the federal anti-discrimination laws, how it responded to Ratra's complaint of discrimination, and how it responded to other complaints of discrimination.

FMLA – DISCRIMINATION AND RETALIATION

QUESTION NO. 4:

Did Morningstar terminate Ratra because Ratra requested FMLA leave?

Answer "Yes" or "No":



INSTRUCTIONS FOR QUESTION NO. 4:

1.    Ratra claims her employment was terminated by Morningstar because she engaged in FMLA-protected activity.

2.    Morningstar denies Ratra's claims and contends it discharged Ratra based on her unauthorized use of Mike Wallace's electronic signature to self-approve her own timesheets, without any prior or subsequent management approval.

3.    It is unlawful for an employer to discriminate or retaliate against an employee for engaging in FMLA-protected activity.

4.    FMLA-protected activity includes, but is not limited to, requesting leave.

5.    To prevail in this case, Ratra must prove by a preponderance of the evidence that:

a.    She engaged in FMLA-protected activity;

b.    Morningstar terminated Ratra's employment;  and

c.    Morningstar terminated Ratra's employment because Ratra engaged in FMLA-protected activity.

6.      If you disbelieve the reason(s) Morningstar has given for its decision, you may infer Morningstar terminated Ratra's employment because of her FMLA-protected activity.

If (a) your answer to Question No. 1 is "yes" and your answer to Question No. 2 is "no," or (b) your answer to Question No. 4 is "yes," then answer the following question. Otherwise do not answer the following question.

FMLA

QUESTION NO. 5:

Did Morningstar deny, restrain, or interfere with Ratra's right to leave under the FMLA, or her attempt to exercise her right to leave under the FMLA?

Answer "yes" or "no":

 yes

INSTRUCTIONS FOR QUESTION NO. 5:

1.     Ratra claims she was entitled to time off from work (i.e., leave) under the FMLA, and that Morningstar interfered with, restrained, or denied her entitlement to time off.

2.     Morningstar denies Ratra's claims and contends it discharged Ratra based on her unauthorized use of Mike Wallace's electronic signature to self-approve her own timesheets, without any prior or subsequent management approval.

3.     It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA.  FMLA rights include requesting or taking leave under the FMLA.

4.     Ratra was entitled to take up to 12 weeks of leave in any 12-month period because of the birth of Ratra's child and to care for that child.

COURT'S CHARGE – PAGE 13

5.      Ratra was required to provide notice to Morningstar indicating when she required FMLA leave.  If the need for leave was foreseeable (i.e., planned or expected), Ratra was required to provide Morningstar at least 30 days notice before leave was to begin, except that if the date of the birth required leave to begin in less than 30 days, Ratra was required to provide such notice as was practicable.  To give Morningstar proper notice of her need for FMLA leave, Ratra was not required to expressly mention the FMLA in particular. Ratra need only have provided Morningstar enough information to place it on notice that leave was needed because of the upcoming birth.

6.      To prevail in this case, Ratra must prove by a preponderance of the evidence that she was entitled to time off from work:

a.      because of the birth of Ratra's child and to care for that child; and

b.      Ratra gave Morningstar the proper notice of the need for time off work for that reason; and

c.      Morningstar in any way interfered with, restrained, or denied Ratra's entitlement to take time off from work.

7.      It does not matter whether Morningstar intended to violate the FMLA.  If Morningstar denied Ratra a right to which she was entitled under the FMLA, then Morningstar is liable, and Ratra should prevail.

DAMAGES

If plaintiff proves her claims by a preponderance of the evidence, you must determine the damages to which she is entitled. You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe plaintiff should, or should not, prevail. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable, and that plaintiff is entitled to recover money from the defendant.

If you find the defendant liable, you must award the amount you find by a preponderance of the evidence as full and just compensation for all of plaintiff's damages. Damages cannot be based on speculation, for it is only actual damages that are recoverable. They are an attempt to make the damaged party whole, or to restore that party to the position that party would have been in if the occurrence had not happened.

You may award damages only for damages that the plaintiff proves were caused by a defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award damages for speculative harm, but only for those damages which the plaintiff has actually suffered.

If you decide to award damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff

prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

Answer each question about damages separately. Do not increase or reduce your answer to one question because of your answer to another question. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

If (a) your answer to Question No. 1 is "yes" and your answer to Question No. 2 is "no," or (b) your answer to either of Question Nos. 4 or 5 is "yes," then answer the following question. Otherwise do not answer the following question.

QUESTION NO. 6:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Ratra for her damages, if any, you have found Morningstar caused Ratra?

Consider the following elements of damages, if any, and none other.

Answer in dollars and cents for damages, if any, for:

a.     Back pay and benefits.

$112,069.82

b.     Emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life:

$100,000

INSTRUCTIONS FOR QUESTION NO. 6:

1.     Back pay and benefits include the amounts the evidence shows Ratra would have earned had she remained an employee of Morningstar, and includes fringe benefits such as life insurance, contributions to retirement, etc., minus the amounts of earnings and benefits, if any, Morningstar proves by a preponderance of the evidence, Ratra received in the interim.

2.     Morningstar asserts that Ratra failed to mitigate her damages. To prevail on this defense, Morningstar must show, by a preponderance of the evidence, that: (a) there

were "substantially equivalent employment" positions available; (b) Ratra failed to use reasonable diligence in seeking those positions; and (c) the amount by which Ratra's damages were increased by her failure to take such reasonable actions.

3.       "Substantially equivalent employment" means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job she lost.  Ratra does not have to accept a job that is dissimilar to the one she lost, one that would be a demotion, or one that would be demeaning.   The reasonableness of Ratra's diligence should be evaluated in light of the individual characteristics of Ratra and the job market.

4.       Morningstar contends that it would have discharged Ratra for misrepresentations and/or omissions in her job application when it discovered those, on or about February 7, 2013.  If you find that Morningstar proves by a preponderance of the evidence that Ratra engaged in misconduct for which Morningstar would have legitimately discharged her solely on that basis, then you should limit Ratra's damages for back pay to the time period from the date of her discharge to February 7, 2013.

5.       There is no exact standard for determining compensatory damages.  You are to determine an amount that will fairly compensate Ratra for any injury she has sustained.  Do not include as compensatory damages any back pay or interest on back pay and/or benefits.

If your answer to Question No. 3 is "yes," then answer the following question. Otherwise do not answer the following question.

QUESTION NO. 7:

What sum of money, if any, if paid now in cash, should be assessed against Morningstar and awarded to Ratra as punitive damages, if any, for the conduct found in response to Question No. 3?

Answer in dollars and cents for punitive damages, if any:

_____

INSTRUCTIONS FOR QUESTION NO. 7:

"Punitive damages" means an amount that you may, in your discretion, award as a penalty or by way of punishment.

Factors to consider in awarding punitive damages, if any, are:

a.    the nature of the wrong;

b.    the character of the conduct involved;

c.    the degree of culpability of the defendant;

d.    the situation and sensibilities of the parties concerned;

e.    the extent to which such conduct offends a public sense of justice and propriety; and

f.    the net worth of the defendant.

## JURY DELIBERATION

The fact that I have given you in this charge instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted in any way as an indication that I believe a particular party should, or should not, prevail in this case.

Your verdict must be unanimous. It is your duty as jurors to consult one another and to deliberate with a view towards reaching an agreement. Each of you must decide the case for yourself, but only after an impartial consideration with each other of all the evidence in the case. In the course of your deliberations, do not hesitate to reexamine your own view and change your opinion if you are convinced it is erroneous. Do not, however, surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or for the mere purpose of returning a verdict. Remember at all times you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

As soon as I finish reading this charge and the attorneys present their closing arguments, you will retire to the jury room. I will send to you exhibits that have been admitted into evidence. You will first select one member of the jury to act as presiding juror. The presiding juror will preside over your deliberations and will speak on your behalf here in court.

Do not deliberate unless all members of the jury are present in the jury room. For example, if one or more of you go to lunch together or are together outside the jury room, do not discuss the case.

When you have reached unanimous agreement as to your verdict, the presiding juror shall fill in your answers to the questions on a copy of the charge that I will provide to you for this purpose, shall date and sign the last page of that copy of the charge, and shall notify the court security officer that you have reached a verdict.  The court security officer will deliver the verdict to me.

During your deliberations the Court will honor any reasonable work schedule you may set and will honor your reasonable requests regarding how frequently you wish to recess and for how long.

If, during your deliberations, you desire to communicate with me, your presiding juror should state your message or questions in writing, sign it, and pass the note to the court security officer, who will bring it to my attention.  I will then respond as promptly as possible, either in writing or by asking you to return to the courtroom so that I can address you in person.  If you do send a message or ask a question in which you indicate that you are divided, never state or specify your numerical division at the time.

SIGNED this 20 day of November, 2013.

David C. Godbey
United States District Judge

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRICIA ANN RATRA,                        §
                                         §
        Plaintiff,                       §
                                         §
v.                                       §        Civil Action No. 3:12-CV-1854-N
                                         §
MORNINGSTAR FOODS, LLC,                  §
                                         §
        Defendant.                       §

## **VERDICT OF THE JURY**

We, the jury, have answered the above questions as indicated, and now return those

questions and answers to the Court as our verdict.

SIGNED this __20__ day of November, 2013.


_Marguerite F Evans_
PRESIDING JUROR

COURT'S CHARGE – PAGE 22