IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TRICIA ANN RATRA,** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO.** |
| v. | § § | **3:12-CV-1854** |
| **DEAN FOODS COMPANY D/B/A MORNINGSTAR FOODS, INC., AND SAPUTO, INC. f/k/a and d/b/a MORNINGSTAR FOODS, LLC,** | § § § § § | |
| **Defendants.** | § | |

### DECLARATION OF MATTHEW R. SCOTT

1. My name is Matthew R. Scott.

2. I am of legal age and of sound mind and have personal knowledge of the facts set forth in this declaration.

3. I am authorized to make this declaration and am competent to testify to the matters contained in this declaration.

4. I swear that every statement made in this declaration is made on my personal knowledge and is true and correct.

5. I am co-counsel for Plaintiff Tricia Ratra in this action.

6. Exhibit 1 to this declaration is a true and correct copy of my resume.

7. I graduated from the University of Iowa in 1990.

8. I graduated from Drake University Law School in 1995.

9. I am licensed to practice law in the State of Texas and have been so licensed since 1995.

10. I started practicing law with Cooper & Aldous PC in 1996 as an associate.

11. I joined the law firm of Bell Nunnally & Martin LLP in June 1999 as an associate.

12. In December 2002, I became Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization, and have remained so certified since then.

13. In January 2003, I was promoted to partner at Bell Nunnally & Martin LLP.

14. In January 2009, I joined the law firm of Ford & Harrison LLP (F&H) in their Dallas office.

15. F&H is a national labor and employment law boutique, which at the time had nearly 200 attorneys in approximately 20 offices nationwide.

16. In or around 2010, I was promoted to be the Administrative (Managing) Partner of F&H's Dallas Office, and remained in that position until I resigned effective May 31, 2012.

17. On June 1, 2012, I joined the Kendall Law Group LLP (KLG) as a partner, and opened the Employment Law Section.

18. I am currently head of the Employment Law Section at KLG.

19. I have eighteen years' experience handling employment lawsuits.

20. In 2006, I was named one of the Top Lawyers in Dallas Under 40 by D-Magazine.

21. In 2004, 2005, and 2006, I was named a Rising Star by Texas Monthly Magazine.

22. In 2010, 2011, 2012, and 2013, I was named a Texas Superlawyer by Texas Monthly Magazine

23. In early 2012, my standard hourly billing rate at F&H was $450.00 per hour.

24. Had I remained at F&H, my standard hourly billing rate today would be around $500.00.

25. My standard hourly billing rate today at KLG $650.00, and there are several reasons for the increase of $150.00 per billable hour.

26. First, there are many charges that KLG incurs but does not bill clients for, such as postage, long distance telephone, copies, electronic legal research, etc.; all these things are calculated into and absorbed within each attorney's hourly rate.

27. Second, when my practice focused solely on defense work, my hourly billing rate was naturally suppressed by (1) a discount for volume, and (2) the sheer number of defense lawyers seeking the limited number of employers for whom they can perform legal services.

28. As to (1), because defense lawyers seek a volume of work, defense lawyers will discount their rates in exchange for more legal work.

29. This does not apply to attorneys whose practices are devoted solely to representing employees in employment litigation on a contingent fee basis.

30. As KLG only represents employees on a contingent fee basis, there is no discount for repeat or volume work.

31. As to (2), I reviewed the Texas Board of Legal Specialization's website and determined there are 175 board certified labor and employment lawyers in Dallas county, but less than 10% of them represent employees solely on a contingent fee basis, and I do not believe any of them have my 17 years of defense-side experience.

32. I believe the results in this case, and in other cases I have handled, reflect the increased value of that defense-side experience and knowledge.

33. In my opinion, those two factors more than account for the $150.00 an hour increase in my hourly billing rate.

34. I am familiar with the type of litigation involved in this matter, legal services ordinarily and necessarily performed by attorneys handling such a matter, and the reasonable, usual, and customary attorney's fees normally charged for handling such matters in counties throughout the State of Texas.

35. In light of the factors set forth above, it is my opinion that my hourly rate ($650.00), as well as the hourly rate for my co-counsel Phillip Doepfner ($400.00), is reasonable and customary for persons performing the type of work conducted in this matter given their respective knowledge, skill, and experience.

36. It is my opinion that the amount of time I spent on the tasks for which an attorney's fee is requested in this case is reasonable, and the services I performed in this case were reasonable and necessary and of the type ordinarily performed by attorneys handling this type of matter.

37. It is my opinion that the amount of time Mr. Doepfner spent on the tasks for which an attorney's fee is requested in this case is reasonable, and the services he performed in this case were reasonable and necessary and of the type ordinarily performed by attorneys handling this type of matter.

38. Giving consideration to the factors set forth in Texas Disciplinary Rule 1.04, it is my opinion that the sum of at least $130,130.00 is a reasonable and customary fee for the legal services I rendered in performing tasks for Plaintiff in this case.

39. Giving consideration to the factors set forth in Texas Disciplinary Rule 1.04, it is my opinion that the sum of at least $170,593.75 is a reasonable and customary fee for the legal services Mr. Doepfner and Walker & Doepfner, PC rendered in performing tasks for Plaintiff in this case.

40. Both Mr. Doepfner and I accepted this case on a contingency fee basis for Plaintiff because she would be unable to afford to pay legal fees at the reasonable and customary rates for Mr. Doepfner me to pursue this matter.

41. Having handled this case on a contingent fee basis, all the time and costs incurred in this case would have been born solely by Mr. Doepfner and my firm had the jury not found for Plaintiff.

42. In this case, Plaintiff asserted claims of pregnancy discrimination, FMLA discrimination/retaliation, and FMLA interference, success on any of which allows for Plaintiff to recover reasonable attorney's fees and costs, including reasonable expert fees.

43. The time and effort required to fully litigate Plaintiff's claims against Defendant necessarily precluded me from undertaking other opportunities for employment.

44. As someone known for my skill in the area of labor and employment law, I receive many referrals on a regular basis.

45. Because of my commitment to Plaintiff's case, I was unable to commit the time to interview prospective clients, accept those cases, and pursue those legal claims.

46. Plaintiff has no relationship with me or any other attorney who has participated in this case that would act to reduce compensation for legal services.

47. Exhibit 2 to this declaration is an accurate, contemporaneous listing of legal services I rendered in this matter as well as the receipts for taxable court costs my firm incurred in this case.

48. I reduced the hours included in Exhibit 2 in all instances where I felt such hours were excessive in light of the work performed.

49.     I also did not record time incurred in this case for a variety of smaller matters, such as conferences with co-counsel, conferences and emails exchanged with opposing counsel, and conferences and emails exchanged with the Court's staff, etc.

50.     Furthermore, in all instances, I eliminated billing for work that was done by others in my office.

51.     The lodestar amount for my work (200.2 hours) through the date of preparation of this declaration totals $130,130.00.

52.     The work I performed was reasonable and necessary, both in terms of the work done and the hours expended.

53.     In evaluating the value of the professional services rendered in this case, I have taken into consideration the twelve factors set out in *Johnson v. George Highway Express, Inc.*, referenced in Plaintiff's Motion for Attorney's Fees and Costs.

54.     In my opinion, based upon my experience in this area, geographically and the area of employment law, the result obtained and the degree of success obtained for Plaintiff in this case is exceptional.

55.     The result obtained is particularly exceptional when measured against Defendant's posture throughout this litigation—Defendant never made any monetary settlement offer to Plaintiff at all, even after the Court denied Defendant's Motion for Summary Judgment.

56.     Exhibit 3 to my declaration is a true and correct copy of a July 27, 2010, decision from the Honorable Jane Boyle in the case of *Nassar v. Univ. Tex. SW Med. Ctr.*

57.     Exhibit 4 to my declaration is a true and correct copy of a declaration from Brian Lauten in support of the plaintiff's application for attorney's fees in the *Nassar* case.

58.     Exhibit 5 to my declaration is a true and correct copy of a declaration from Brent Walker in support of the plaintiff's application for attorney's fees in the *Nassar* case.

59.     Exhibits 3 through 5 demonstrate that Judge Boyle approved rates for Dallas attorneys in an employment matter where the plaintiff obtained an excellent result as follows:

| Attorney | Year of Admission | Hourly Rate |
| --- | --- | --- |
| Charla Aldous | 1982 | $750.00 |
| Brian Lauten | 2001 | $500.00 |
| Brent Walker | 2004 | $400.00 |

60.     These exhibits show that the billable hourly rates for Mr. Doepfner and me are reasonable and well within the ranges awarded by other courts in similar cases.

61.     Exhibit 6 to my declaration is a true and correct copy of a jury verdict recently obtained in state district court in Dallas County, Texas, in another case I tried just two weeks before this case was tried.

62.     Exhibit 7 to my declaration is a true and correct copy of a jury verdict obtained in federal district court in Sherman, Texas, in another case I tried in September 2013.

63.     If Defendant appeals the judgment in this case, I will be primarily responsible for handling that appeal.

64.     I have handled multiple appeals to the Fifth Circuit Court of Appeals before, and I have handled multiple appeals in state appellate court in Texas before as well, and am familiar with the time incurred on appeals.

65.     Between reviewing the record on appeal, researching the issues raised on appeal, drafting the brief, which includes citation to the record evidence, I anticipate spending two weeks on these activities, at forty hours per week.  At my rate of $650.00, I anticipate Plaintiff will incur an additional $52,500.00 in attorney's fees on appellate briefing to the Fifth Circuit Court of Appeals.

66. If Defendant seeks and the court of appeals grants oral argument in the case, I anticipate spending another week (of forty hours) preparing for and attending oral argument. At my rate of $650.00 per hour, I anticipate Plaintiff will incur an additional $26,000.00 in attorney's fees on oral argument.

67. If Defendant files a motion for rehearing on banc that is granted, I anticipate spending another week (of forty hours) preparing for an attending that oral argument. At my rate of $650.00 per hour, I anticipate Plaintiff will incur an additional $26,000.00 in attorney's fees on en banc oral argument.

68. If Defendant files a petition for a writ of certiorari to the United States Supreme Court I will handle that appeal.

69. I have handled one appeal to the United States Supreme Court, and am familiar with the time incurred on such activity.

70. I anticipate I would spend one week (of forty hours) to prepare briefing in response to a petition for a writ of certiorari. At my rate of $650.00 per hour, I anticipate Plaintiff will incur an additional $26,000.00 in attorney's fees on briefing in response to a petition for a writ of certiorari to the United States Supreme Court.

71. If the United States Supreme Court were to grant the petition for a writ of certiorari and request merit briefing and oral argument, I would handle those activities. I anticipate spending another two weeks (at forty hours per week) on a merits brief, and another week (of forty hours) of preparation for and participation in oral argument. At my rate of $650.00 per hour, I anticipate Plaintiff will incur an additional $78,000.00 in attorney's fees on merits briefing and oral argument before the United States Supreme Court.

72. These amounts are reasonable estimates of the time and attorney's fees Plaintiff will incur in the event any of these activities are pursued, unsuccessfully, by Defendant. I make these estimates based on my experience in handling other appeals to both the Fifth Circuit Court of Appeals as well as to the United States Supreme Court.

I swear and declare under penalty of perjury that the above and foregoing are true and correct and based on my own personal knowledge.

MATTHEW R. SCOTT